IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MILLIS STOKES,

        Plaintiff,

v.                                           Civil Action No. 3:10cv370

COMMONWEALTH OF VIRGINIA
DEPARTMENT OF CORRECTIONS,

        Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report

and Recommendation on Defendant Commonwealth of Virginia Department of Corrections's

("VDOC") Motion for Summary Judgment (Docket No. 47) and Plaintiff Millis Stokes's Motion

to Support the Continued Complaint Against the Commonwealth of Virginia ("Motion to

Continue Complaint") (Docket No. 49).[1] The Court has determined that the parties have

adequately presented the facts and legal contentions on the record such that oral argument would

not aid the decisional process. This matter is now ripe for disposition. For the reasons stated

below, it is RECOMMENDED that the Court GRANT VDOC's Motion for Summary Judgment

and DENY Stokes's Motion to Continue Complaint.

## I. Introduction and Procedural History

On August 17, 2000, Stokes, a correctional officer at Dinwiddie Correctional Unit,

received a Group III Written Notice terminating his employment with VDOC effective

immediately. Stokes unsuccessfully challenged his termination through grievance proceedings

---

[1] VDOC included proper *Roseboro* notice in its Motion for Summary Judgment, advising Stokes of the necessity of filing a proper response. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). It appears that Stokes filed his Motion to Continue Complaint in response to VDOC's Motion for Summary Judgment.

and a federal lawsuit. A large portion of Stokes's briefing and attached exhibits relate solely to

his grievance proceedings challenging his termination even though he simultaneously concedes

that the current lawsuit does not challenge his termination or the prior grievance proceedings.

The Court provides a brief procedural history of the previous proceedings to serve as a context

for the limited issue presented in Stokes's current lawsuit, which does not challenge his

termination from VDOC, but instead challenges VDOC's subsequent refusal to rehire him.

A.   **Virginia Grievance Proceedings**

Stokes challenged his Group III Written Notice and his termination through Virginia

grievance proceedings, claiming that the facts alleged in the August 17, 2000 termination notice

were false. (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp.") Ex. 8, at 1.)  On

November 7, 2000, after an evidentiary hearing, Hearing Officer Beverly C. Powell denied

Stokes's grievance, making the following findings of facts and conclusions:

> In his work as a Correctional Officer at Dinwiddie, Stokes served as the armed officer accompanying a gang of inmates performing work assignments for the Virginia Department of Transportation off the premises of the Dinwiddie Correctional Unit.

> . . . .

> On the morning of August 17, 2000, Stokes was scheduled to take a gang of inmates on a work assignment. Warden Snodgrass observed Stokes exit the main building of the unit carrying a 12-guage shotgun and a 38-caliber revolver. As Stokes came down the steps of the building, before reaching the area for loading weapons, he pumped the shotgun and dry fired it several times.

> Warden Snodgrass went to advise Stokes that his gang would not be needed to go out that day. The Warden also told Stokes that pumping and dry firing the weapon was not necessary and was against policy.

> Stokes told the Warden that the Warden could not tell him shit about what to do, and that the Warden didn't mean shit to him. During this encounter, Stokes was less than a foot from the Warden's face. The incident occurred outside the main building, in public view.

2

> Stokes denied the incident described . . . above occurred.
>
> . . . .
>
> Stokes'[s] testimony regarding the events of August 17, 2000 is not credible . . . .
>
> Stokes'[s] conduct on August 17, 2000 . . . was grossly insubordinate.
>
> Based upon the preponderance of the evidence, I find that grievant Millis Stokes was insubordinate to Warden Snodgrass.  Given the egregiousness of the incident, the grievant's history of insubordination and intimidation, and his utter denial of every instance of such conduct reported by credible and unbiased witnesses, it is clear that termination was the only acceptable sanction.  No mitigation would have been appropriate.

(Def.'s Mem. Supp., Ex. A at 2-4 (paragraph numbering omitted).)

Stokes appealed the hearing officer's decision to the Circuit Court of Dinwiddie County, Virginia ("Circuit Court").  The Circuit Court affirmed the hearing officer's decision, upholding Stokes's termination as not contradictory to law.  Final Order, *Stokes v. Dinwiddie Corr. Unit #27*, No. CL01-05 (Va. Cir. Ct. entered Oct. 11, 2002); (Def.'s Mem. Supp., Ex. 9).

### B.     Stokes's Section 1983 Lawsuit

On October 20, 2003, Stokes filed a complaint in this Court against VDOC.  Complaint, *Stokes v. Angelone*, No. 3:03cv869, at 3 (E.D. Va. filed October 20, 2003).  Stokes then filed a motion to add/drop defendants, and the suit proceeded solely against Ron Angelone, individually and in his official capacity as the then-Director of VDOC.  Order, *Stokes v. Angelone*, No. 3:03cv869, at 3 (E.D. Va. filed December 29, 2003).  In this lawsuit, Stokes sought relief, pursuant to 42 U.S.C. § 1983,[2] for alleged substantive and procedural due process violations.

---

[2] This statute allows a claimant to recover for deprivation of civil rights under color of state law and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

On February 26, 2004, the Honorable Henry E. Hudson dismissed Stokes's amended

complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1), or in the alternative for failure to state a claim pursuant to Rule 12(b)(6).

Memorandum Opinion & Order, *Stokes v. Angelone*, No. 3:03cv869, at 7-8 (E.D. Va. filed Feb.

26, 2004), *aff'd*, No. 04-1393, 2004 WL 2203996 (4th Cir. Sept. 15, 2004). The Court found that

it lacked subject matter jurisdiction after applying the *Rooker-Feldman* doctrine.[3] *Id.* The

United States Court of Appeals for the Fourth Circuit affirmed. *Stokes*, 2004 WL 2203996, at

*1.

### C.    The Instant Complaint

On June 2, 2010, Stokes, proceeding *pro se*, filed a Complaint against VDOC in this

Court.[4] The Complaint alleges that VDOC violated Title VII[5] of the Civil Rights Act by refusing

to rehire Stokes in retaliation for Stokes's former grievances, prior complaints filed with the

Equal Employment Opportunity Commission ("EEOC"), and other efforts to be reinstated

---

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[3] The *Rooker-Feldman* doctrine dictates that lower federal courts lack jurisdiction over a party's challenge to a state court decision. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). The Honorable Henry E. Hudson determined that Stokes's claims were "so intertwined with the prior state circuit court litigation as to necessitate application of the *Rooker-Feldman* doctrine." *Stokes*, No. 3:03cv869, at 7.

[4] Because Stokes's submissions do not contain page numbers, the Court will refer to the pages of his submissions as numbered by CM/ECF.

[5] 42 U.S.C. § 2000e, *et seq.*

following his termination.[6]  (Compl. ¶ 8.)  At the core of Stokes's current claim, he asserts that the Virginia Department of Human Resource Management deemed him eligible to return to work as of February 10, 2003, and that VDOC has failed to rehire him in retaliation for his prior grievances and complaints.  (*See* Pl.'s Mem. Supp. 5, 17-19, 21-27, 29-30, 32-33.)

Stokes based his claim of retaliatory refusal to rehire on numerous unsuccessful job applications dating from 2003 to 2008.  VDOC, however, filed a motion to dismiss, asserting that Stokes's Complaint was partially barred by the applicable statute of limitations.  The Court granted in part VDOC's motion to dismiss, finding that the statute of limitations for Title VII actions barred Stokes's claim to the extent it was predicated on discrete acts of discrimination

---

[6] Stokes did not separate into discrete counts the factual allegations and enumerated paragraphs within the Complaint.  While Stokes's Complaint contains factual allegations relating to his termination from VDOC, Stokes has verified in subsequent filings that the instant complaint does not challenge the underlying termination and does not raise what he perceived to be procedural violations or irregularities in the underlying state grievance proceeding.  The Complaint challenges only VDOC's refusal to rehire Stokes:

> The current case before the [C]ourt is based on discriminatory action by [VDOC] for the decisions not to re-hire [Stokes] who is qualified for the position of Senior Corrections Officer after applying numerous times for vacant positions after February 10, 2003 when it was determined he could return to work with [VDOC], and due to adverse comments in the personnel record and retaliation for attempts to be heard to correct the record.

(Pl.'s Mem. Supp. Continued Compl. ("Pl.'s Mem. Supp.") 4; *see also* Pl.'s Mem. Supp. 5-6; Pl.'s Resp. in Opp'n to the Def.'s 2d Mot. Dismiss 12.)

Stokes confirms that "the prior proceedings and history [were] mentioned as background information" to "explain [his] frustration, action, search for relief, need to clear his name, resolution and reasoning why the current complaint has been filed." (Pl.'s Mem. Supp. 7; *see also* Pl.'s Resp. in Opp'n to the Def.'s 2d Mot. Dismiss 5.)  Stokes admits "that prior events cannot be changed, those that occurred during the administrative process [as] well as court actions in attempting to resolve this case" and that "[t]he statements of prior facts cannot be changed due to the proceedings that have occurred over the years." (Pl.'s Mem. Supp. 7, 8.)  Indeed, Stokes states that he "is not asking the [C]ourt to uphold or reverse any state rulings in the current federal complaint" and that "[t]he termination is not the current issue which would be preclusion and successive litigation." (Pl.'s Mem. Supp. 23.)

Given Stokes's numerous representations on the record, the Court construes Stokes's current Complaint to allege retaliatory refusal to rehire. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

occurring before June 21, 2007. (July 1, 2011 Report & Recommendation, *adopted by* August 12, 2011 Order.) Accordingly, the Court allowed Stokes's Complaint to proceed only to the extent it alleges retaliatory refusal to rehire based on VDOC's December 4, 2007 and February 22, 2008 rejections of his applications for employment. (*Id.*)

This matter now comes before the Court on VDOC's Motion for Summary Judgment. In response to VDOC's Motion for Summary Judgment, Stokes filed a Motion to Continue Complaint, with an accompanying brief in support, and over ninety pages of exhibits.

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v.*

*Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).  Ultimately, the court must adhere to the affirmative

obligation to bar factually unsupportable claims from proceeding to trial.  *Felty v. Graves-*

*Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex Corp.*, 477 U.S. at 323-24).

### III.  Preliminary Issues

The Court must address several preliminary evidentiary matters before it can adequately

set forth the undisputed facts of the case.

### A.    Errata Sheet

First, VDOC objects to any consideration of Stokes's errata sheet, which Stokes entitled

"Corrections to Disposition [sic]."  (Def.'s Mem. Supp. Ex. 2, Deposition of Millis Stokes

("Stokes Dep."), Corrections to Disposition.)  Stokes asks the Court to consider his errata sheet,

explaining:  "Material facts supported by documents which have been previously presented to

the Court for consideration were not available during the disposition [sic] as reference and

clarification therefore resulting in submission of the corrections and clarification[s]."  (Pl.'s

Mem. Supp. 8.)

Under Federal Rule of Civil Procedure 30, a deponent may make "changes in form or

substance" by "sign[ing] a statement listing the changes and the reasons for making them."  Fed.

R. Civ. P. 30(e)(1).  Here, Stokes's errata sheet lists additions he seeks to include, but fails to

provide any reasons for the additions.  (Stokes Dep., Corrections to Disposition.)  "It is, of

course, clear that, if the deponent does not provide any reasons for a change, then the rule is

violated and that procedural defect alone renders the errata sheet improper."  *E.I. du Pont de*

*Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 295 (E.D Va. 2011).  While Stokes

provides a general reason for the additions in his briefing, "the mere statement of some reason

does not alone satisfy the rule.  That is because courts require that each proffered change be

accompanied by a specific reason that explains the nature of, and the need to make, the change."
*Id.* The Court declines to consider Stokes's errata sheet because it does not meet the procedural
requirements of Rule 30(e)(1).[7] Even were the Court to consider this document, the information
contained would not overcome VDOC's summary judgment motion.

## B.   Declaration of Ernest G. Spratley

In his sworn brief, Stokes contends he did not receive a copy of the Declaration of Ernest
G. Spratley, an exhibit presented by VDOC in support of its summary judgment motion. (Def.'s
Mem. Supp. Ex. 5, Declaration of Ernest G. Spratley ("Spratley Decl."); Pl.'s Mem. Supp. 17
("A declaration from Ernest Spratley was not included in the 11/1/11 package sent to [Stokes] as
referenced several times in his Memorandum of Law of the same date.").) In response, VDOC
states that it "mailed [Stokes] the Motion for Summary Judgment, Memorandum in Support and
*each* of the attachments, exhibits and declarations on November 1, 2011, by first-class mail. If
[VDOC] failed to attach the Declaration of Ernest G. Spratley it was by inadvertence and is
attached to this Reply." (Def.'s Reply 5 n.9.) Because Stokes contends he did not have the
opportunity to respond to the Spratley Declaration, and because the Court finds summary

---

[7] Even in the absence of this procedural defect, the Court would not consider Stokes's
errata sheet. Rule 30(e)(1) allows "only the correction of demonstrated errors made by the court
reporter, whether in form or in substance." *E.I. du Pont de Nemours & Co.*, 277 F.R.D. at 297
(*citing Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002); *Greenway v. Int'l
Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)). "'Th[is] Rule cannot be interpreted to allow
one to alter what was said under oath. If that were the case, one could merely answer the
questions with no thought at all then return home and plan artful responses.'" *Id.* (*quoting
Greenway*, 144 F.R.D. at 325). Stokes's errata sheet does not correct court reporter errors, but
instead improperly expands his testimony, often including information nonresponsive to the
questions asked. *Id.* ("It makes no sense to allow a deponent to change sworn testimony merely
because after the deposition he wishes that he had said something other than what was said.
Indeed, to adopt such an approach would be to set at naught the efficacy of the deposition
process."); *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 465 (E.D. Va. 2011)
("'[T]he purpose of an errata sheet is to *correct alleged inaccuracies* in what the deponent *said* at
his deposition, not to modify what the deponent said for tactical reasons or to reflect what he
wishes that he had said.'" (*quoting Crowe v. Marchand*, No 05-98T, 2006 WL 5230014, at *1
(D.R.I. Aug. 17, 2006)) (alteration in original)).

judgment appropriate even in the absence of this evidence, the Court, out of an abundance of caution, declines to consider the Spratley Declaration.

### C.   Documents Attached by Stokes to His Brief

As the final preliminary matter, the Court notes that Stokes attaches over ninety pages of exhibits to his briefing. Many of these exhibits constitute unauthenticated documents which cannot be considered by the Court. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); (*see e.g.*, Pl.'s Mem. Supp. Attach. 44.) The Court finds many other exhibits irrelevant because they appear to relate solely to a challenge of his underlying termination or to procedural irregularities during his grievance proceedings, issues not before the Court. (*See e.g.*, Pl.'s Mem. Supp. Attachs. 8-11, 29-38.)

### IV.   Undisputed Facts Pertinent to the Summary Judgment Motion[8]

### A.   Stokes's Employment with VDOC

Stokes's employment with VDOC began in May 1984 and continued for over sixteen years. (Compl. ¶ 4; Answer ¶ 4.) During the time period relevant to this case, Stokes was employed as a Senior Corrections Officer at the Dinwiddie Correctional Unit #27, and James Snodgrass was the Superintendent and Unit Head of Dinwiddie Correctional Unit #27. (Def.'s Mem. Supp. Ex. 8, at 2; Def.'s Mem. Supp. Ex. 7, Declaration of James Snodgrass ("Snodgrass Decl.") ¶¶ 2,3; Stokes Dep. 14:19-23, 20:4-7, 21:25-22:2.)

---

[8] Because the Court ultimately recommends granting VDOC's Motion for Summary Judgment, the Court recites and views these facts in the light most favorable to Stokes, the nonmoving party.

It should be noted that Stokes attempts to raise numerous factual disputes, but these factual disputes are not material because they are not outcome determinative. *See Anderson*, 477 U.S. at 248. Indeed, the vast majority attempt to dispute the events resulting in his termination, an issue not before the Court.

On August 17, 2000, Snodgrass issued Stokes a Group III Written Notice and terminated Stokes's employment based on insubordination. (Compl. Ex. 1; Stokes Dep. 14:16-15:13, 20:8-10; Snodgrass Decl. ¶ 7.) The Group III Written Notice contains the following explanation from Snodgrass:

> Insubordination toward Superintendent: On Aug. 17, 2000 at approx. 7:55 am, I advised you that dry firing the shotgun was not appropriate or necessary. You advised me that you did not give a shit about what I said, that I could not tell you anything. You also stated that you did not care for me.

(Compl. Ex. 1.) Snodgrass designated removal effective that same day as the disciplinary action taken. (Compl. Ex. 1; Snodgrass Decl. ¶ 7.)

### B.    Ineligibility for Rehire

VDOC officials determined that Stokes's verbally abusive and insubordinate conduct on August 17, 2000 occurred in an area where staff and inmates could witness the exchange, exhibited disrespect for Snodgrass's authority, and threatened the security of the facility. (Snodgrass Decl. ¶ 7; Def.'s Mem. Supp. Ex. 6, Declaration of H. Paul Broughton ("Broughton Decl.") ¶7.) Given these circumstances, Snodgrass "did not believe [Stokes] should be permitted to be rehired and indicated this on Stokes'[s] employment record. The notation for ineligible for rehire was noted in Stokes'[s] personnel file in 2000." (Snodgrass Decl. ¶ 9; Broughton Decl. ¶ 7 ("Stokes'[s] blatant insubordination toward the Unit Head James Snodgrass made him ineligible for consideration for future employment with [V]DOC . . . .").)

After his termination, Stokes submitted numerous applications for job positions within VDOC. (Compl. ¶ 8; Answer ¶ 5.) In August 2005, Stokes received notification from Sussex II State Prison ("SIISP") that his interview had been cancelled after Snodgrass informed SIISP that Stokes was not eligible for rehire. (Stokes Dep. Ex. 3.) Stokes then requested information as to why Snodgrass deemed him ineligible for rehire. (*Id.*) Stokes received a letter dated August 31,

2005 from H. Paul Broughton, Director for Human Resources for VDOC, responding to his

inquiry. (Stokes Dep. 11:20-12:2; Stokes Dep. Ex. 3; Broughton Decl. ¶ 2.) In this letter,

Broughton states:

> Generally when an employee is terminated the employee is not eligible for rehire
> with [VDOC]. Given the reason for your termination, it was Mr. Snodgrass'[s]
> opinion that you were not eligible for rehire. It is also my opinion that given the
> nature of your behavior that resulted in termination, it would not be in the best
> interest of [VDOC] to rehire you.

(Stokes Ex. 3.)

### C.     The Modified Group III Written Notice

At the core of the current lawsuit, Stokes points to a modified Group III Written Notice

as support for his contention that he has been eligible for rehire since February 10, 2003. (*See*

Stokes Dep. Ex. 5.) This modified notice is identical to the Group III Written Notice issued by

Snodgrass on August 17, 2000 with the exception of two date stamps and what appear to be

initials. (*Id.*) According to Stokes, this modified notice includes a crossed-out date stamp of

February 6, 2003 above the "return to work" section of the form, accompanied by the initials of

Ernest Spratley, who works at the Virginia Department of Human Resource Management.

(Stokes Dep. 16:9-17:9, 19:17-20; Stokes Dep. Ex. 5.) Below the crossed-out date stamp, a

second date stamp, February 10, 2003, appears. (Stokes Dep. 16:12; Stokes Dep. Ex. 5.)

Stokes contends he went to see Spratley at the Virginia Department of Human Resource

Management about his employment with VDOC, and Spratley later sent this modified notice to

Stokes's former attorney. (Stokes Dep. 16:13-16, 17:12-16.) Although Stokes did not see

Spratley initial this document and has not asked Spratley if the document contains his initials,

Stokes has seen Spratley's signature on other paperwork. (Stokes Dep. 18:13-15, 19:2-3, 19:21-

11

20:3.)[9] From this evidence, Stokes argues that the Virginia Department of Human Resources

determined he should return to work effective February 10, 2003.

### D.    The Employment Applications at Issue

In December 2007, Stokes applied for a corrections officer position with the Deerfield

Correctional Center ("Deerfield"). (Stokes Dep. 6:10-14.) Stokes received a letter dated

December 4, 2007 from Human Resource Manager Linda L. Covington, stating:

> Your application indicates you were previously employed by the Commonwealth of Virginia at another agency. Procedure requires me to contact former agencies and inquire as to whether you are eligible for re-hire with the State.
>
> I contacted the Commonwealth of Virginia agency where you were previously employed. That agency indicated to me that you were not eligible for re-hire with the Commonwealth of Virginia. Therefore, your application for employment at Deerfield Correctional Center will not continue to be considered.

(Stokes Dep. Ex 1; *see also* Stokes Dep. 6:15-7:20.)

In January 2008, Stokes applied and interviewed for a corrections officer position with

the Greensville Correctional Center ("Greensville") and received a favorable recommendation

after the interview. (Stokes Dep. 7:21-8:6.) Stokes subsequently received a letter dated

February 22, 2008 from Personnel Analyst Susan Moore, stating:

> I regret to inform you that you were not selected for the vacant Corrections Officer position that you recently applied for at Greensville Correctional Center.
>
> Thank you for your interest in employment with Green[s]ville Correctional Center. You are encouraged to apply for other positions of interest to you as those positions become available.

---

[9] In Spratley's Declaration, he states that his initials are "EGS" and that his initials do not appear on the modified notice. (Spratley Decl. ¶5.) Spratley also states that he does not have the authority to return terminated VDOC employees to work. (Spratley Dec. ¶¶ 3, 6, 8.) Regardless, as discussed above, the Court will not consider this declaration in ruling on VDOC's summary judgment motion. *See supra* Part III.

(Stokes Dep. Ex. 2; *see also* Stokes Dep. 8:1-9:19.)  "Stokes was not rehired because during the routine Background Investigation conducted on all new employees or rehires, it was found he had been terminated from the Department of Corrections in 2000 and was not eligible for rehire." (Broughton Decl. Ex. 3; *see also* Broughton Decl. ¶ 9.)[10]

On April 16, 2008, Stokes filed a Charge of Discrimination with the EEOC, alleging retaliatory refusal to rehire due to previous discrimination charges.  (Stokes Dep. 9:20-11:5; Def.'s Mem. Supp. Ex. 12.)  The EEOC issued a Dismissal and Notice of Rights letter dated March 5, 2010.  (Def.'s Mem. Supp. Ex. 12.)

## V.  Analysis

### A.    Applicable Law

Title VII makes it unlawful for an employer to discriminate against any "applicants for employment . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  This anti-retaliation provision prevents "employer[s] from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).  Courts interpret this provision broadly because the accomplishment of the goals of Title VII depends on

---

[10] Stokes attaches several other applications for employment which he did not mention originally in his Complaint and which he has failed to properly authenticate. (Pl.'s Mem. Supp. Attach. 44.)  However, in his sworn brief, Stokes states the following: "[A]pplications were submitted at Green[s]ville (11/14/07), Sussex II (11/20/07), Brunswick (11/19/07), Sussex I (11/20/07) and Mecklenburg (12/17/07) without success of employment.  These applications occurred during the designated time period for consideration also." (Pl.'s Mem. Supp. 19.)  Stokes fails to present evidence as to why these applications for employment were denied and fails to identify the relevant decision-makers.

the "cooperation of employees who are willing to file complaints and act as witnesses." *Id.* at 67.

Because Stokes has not presented any direct evidence of intentional discrimination or retaliation, the Court must analyze his claim under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). To succeed on a retaliation claim in the absence of direct evidence, a plaintiff must first establish a prima facie case of retaliation by showing that: (1) the plaintiff was engaged in a protected activity; (2) the employer acted adversely against the plaintiff; and, (3) the protected activity was causally connected to the adverse action. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).

After the plaintiff has established a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. The employer's burden to provide a legitimate, nondiscriminatory reason is one of production, not persuasion, and does not involve a credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Although the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Therefore, if the employer provides a legitimate, nondiscriminatory reason for an adverse employment action, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

14

The plaintiff need only produce sufficient evidence of the falsity of the employer's proffered reason for the adverse employment action. *Reeves*, 530 U.S. at 146-49 (rejecting the pretext plus requirement, which required plaintiffs to show both that the reason was false, and that discrimination was the real reason for the challenged conduct). A plaintiff fails to demonstrate an employer's pretextual rationale for the adverse employment action "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'" *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) (internal citations omitted). Moreover, the plaintiff's own determination that the employer's proffered reason for the adverse action is pretextual carries no weight. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

At the conclusion of the court's *McDonnell Douglas* analysis, a prima facie case combined with sufficient evidence of the employer's pretextual reason for the adverse employment action may permit a finding that the employer discriminated against the plaintiff. *Reeves*, 530 U.S. at 148.

### B.     Stokes Has Failed to Show Pretext

VDOC's briefing appears to assume that Stokes could present a prima facie case of retaliation, arguing solely that it had a legitimate business reason to deny rehire and that Stokes cannot show pretext. Given the constraints of VDOC's briefing, the Court will assume that Stokes could present a prima facie case of retaliation.[11] Even assuming Stokes could establish a prima facie case of retaliation, he cannot survive summary judgment because he has failed to show pretext.

---

[11] Because Stokes's Motion to Continue Complaint, accompanying briefing, and attached exhibits attempt to develop a prima facie case of retaliation, the Court will address Stokes's arguments and evidence as to that issue below.

Pursuant to the *McDonnell Douglas* framework, once a plaintiff has met the requirements of a prima facie case, the defendant must then put forth a legitimate reason for the adverse employment action it took against the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. In this case, VDOC satisfies this burden. VDOC has presented evidence that a previously terminated employee is generally not eligible for rehire. Considering the nature of Stokes's behavior on August 17, 2000 and absent any discriminatory basis, Snodgrass determined that Stokes should be ineligible for rehire and noted that in Stokes's employment record. The record demonstrates that Deerfield and Greensville performed routine investigations into Stokes's previous employment with VDOC and denied him employment after discovering he had been previously terminated from VDOC and was ineligible for rehire. Thus, VDOC has demonstrated that it based its refusal to rehire Stokes on legitimate, non-discriminatory concerns.

Because VDOC has offered non-discriminatory justifications for denying Stokes's rehire, the presumption of discriminatory retaliation has "'drop[ped] out of the picture.'" *Reeves*, 530 U.S. at 143 (*quoting St. Mary's Honor Ctr.*, 509 U.S. at 511). The burden then shifts back to Stokes to show evidence of pretext, and he fails to meet this burden. *See Burdine*, 450 U.S. at 253. No evidence before the Court suggests that Deerfield, Greensville, or any other correctional center denied Stokes employment for any reason other than his previous termination and ineligibility for rehire.

In an attempt to show pretext, Stokes points to the modified notice, which he claims indicates he "could return to work effective February 10, 2003." (Pl.'s Mem. Supp. 6; *see also* Pl.'s Mem. Supp. 17.) Stokes argues that his previous termination "was reversed when the Human Resource Office reviewed the case in 2003 and said [he] should return to work." (Pl.'s Mem. Supp. 26.) However, Stokes fails to back this argument with admissible evidence. First,

Stokes asks the Court to assume that the initials on the modified notice belong to Spratley.[12] Second, Stokes encourages the Court to make the unsupported inference that Spratley placed a date stamp of February 6, 2003 above the "return to work" section, crossed it out, and then placed a date stamp of February 10, 2003 below the "return to work" section. Third, Stokes invites the Court to speculate that these date stamps overturned Snodgrass's decision to terminate Stokes and indicated a suspension with a return to work date of February 10, 2003.

Ultimately, the evidence presented by Stokes is not based on personal knowledge and improperly relies on mere speculation or the building of one inference upon another. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (stating that affidavits submitted in opposition to summary judgment must be based on personal knowledge and cannot be conclusory); *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984) ("Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another."). Based on this record, the Court cannot find that the modified notice demonstrates his eligibility to return to work, and Stokes's attempt to show pretext using this document fails.

Stokes also attempts to show pretext by challenging Snodgrass's determination that he was ineligible for rehire.[13] Stokes argues that Snodgrass based his decision as to ineligibility for rehire on improper factors. (Pl.'s Mem. Supp. 30.) As support for this argument, Stokes states that an "unpleasant atmosphere" existed between them (*id.* at 5), that Snodgrass had previously treated him unfairly (*id.*), that Snodgrass disliked Stokes's personality (*id.* at 29) and that Stokes "felt [that his race] was a factor" in receiving unfair treatment (*id.*). However, these

---

[12] While Stokes testified he had seen Spratley's signature on other paperwork, he did not testify that he had acquired a familiarity with Spratley's handwriting such that he could properly identify his initials. *See* Fed. R. Evid. 901(b)(2). Stokes has failed to lay the proper foundation to render an opinion on whether Spratley initialed the notice.

[13] While Stokes's briefing often challenges the factual allegations surrounding his termination, he has conceded that he does not and cannot contest his termination.

"[c]onclusory assertions that [Snodgrass's] state of mind and motivation are in dispute are not enough to withstand summary judgment." *Goldberg v. B. Breen & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988); *see also Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (finding the plaintiff's conclusory allegations insufficient to support a finding of pretext); *Evans*, 80 F.3d at 960 (finding that an employees' unsubstantiated allegations and bald assertions fail to show discrimination). Stokes has presented no evidence demonstrating that Snodgrass based the ineligibility for rehire decision on any factor other than the nature of Stokes's behavior leading to his termination. Regardless, no evidence before the Court suggests that the relevant decision-makers would have known of any improper factor involved in the eligibility determination. Thus, Stokes has failed to prove that VDOC's legitimate, nondiscriminatory reason for denied employment was pretextual, and his retaliation claim must be DISMISSED WITH PREJUDICE.

### C.    Prima Facie Case of Retaliation

Despite the constraints of VDOC's briefing, Stokes attempts to demonstrate a prima facie case of retaliation throughout his briefing and accompanying exhibits. Although the Court need not rule on whether a prima facie case exists, the Court briefly turns to this issue to recognize the girth of the record before it, albeit in misplaced effort. Indeed, were the Court to fully consider the viability of Stokes's claim, the Court would likely find that Stokes could not demonstrate a prima facie case.

Although Stokes fails to clearly articulate the conduct that he contends constituted protected activity, from his briefing, it appears he attempts to assert the following as protected activity: (1) prior grievances against Snodgrass (Pl.'s Mem. Supp. 4, 6, 19, 20); (2) prior litigation against VDOC (*id.* at 19); (3) prior EEOC complaints (*id.* at 6); and, (4) prior "requests

18

to state agencies and legislative bodies, legislators, Attorney Generals and three Governors for investigation into the department's policies and procedures" (*id.* at 19).

However, Stokes's prior litigation against VDOC and his prior requests for investigation into procedural irregularities would not constitute protected activity because no admissible evidence before the Court suggests these activities challenged conduct made unlawful by Title VII. Instead of alleging discrimination, Stokes earlier challenged his termination by raising due process concerns. *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338-39 (4th Cir. 2006); *Mann v. First Union Nat'l Bank*, 185 F. App'x 242, 248 (4th Cir. 2006); *Richardson v. Richland Cnty. Sch. Dist.*, 52 F. App'x 615, 617 (4th Cir. 2002) (*citing Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292-92 (2d Cir. 1998)).

As for prior EEOC charges, the admissible evidence before the Court demonstrates that Stokes filed a Charge of Discrimination in April 2008. While this Charge of Discrimination would clearly constitute protected activity under Title VII, it also post-dates the challenged refusals to rehire. While Stokes's errata sheet indicates he filed a prior Charge of Discrimination in May 2006 "based upon prior applications and rejection letters from [VDOC]" (Stokes Dep., Corrections to Disposition 23:6), the Court has declined to consider this document for the reasons stated above. *See supra* Part III.

Finally, although Stokes presents evidence regarding three grievances,[14] only one grievance would possibly constitute protected activity because it mentions discrimination,

---

[14] On July 1, 1997, Stokes submitted a grievance form, complaining about the manner in which Snodgrass confronted Stokes about his beard. (Pl.'s Mem. Supp. Attach. 1.) In this grievance, Stokes requested that Snodgrass respect him and stop "play[ing] head games." (*Id.*) The grievance makes no mention of any alleged discrimination. (*Id.*)

On October 8, 1999, Stokes filed another grievance against Snodgrass. (Pl.'s Mem. Supp. Attach. 2.) This grievance requested that he be issued an employee state jacket and alleged that Snodgrass's refusal to issue him a jacket was due to discrimination. (*Id.*) Stokes

although it did not detail the specific type of discrimination. *See Gregory v. City of Va. Beach*, 428 F. Supp. 2d 422, 431 (E.D. Va. 2006). The other two grievances did not complain about discrimination. In his sworn brief, Stokes states that as a black male working "with predominately white upper management supervisors," he "felt th[at] was a factor" in issues leading to his grievances. (Pl.'s Mem. Supp. 29.) Aside from this conclusory statement, Stokes presents no evidence that would allow the Court to conclude that the grievances opposed conduct made unlawful by Title VII or conduct that Stokes reasonably believed to be unlawful under Title VII. *See Jordan*, 458 F.3d at 338-39.

Ultimately, it appears likely that the Court could not find that Stokes could demonstrate a causal connection between the one grievance mentioning discrimination, i.e., the protected activity, and his denied employment. He has presented no evidence suggesting that the relevant decision-makers knew of any protected activity at the time of the denied employment. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Ultimately, the Court would likely find that Stokes has presented no evidence as to a causal connection aside from his own self-serving conclusory opinion. *See Mackey v. Shalala*, 360 F.3d 463, 469-70 (4th Cir. 2004) (finding a plaintiff's self-serving opinions insufficient to

---

further stated in the grievance that he was tired of Snodgrass "playing games and treating [him] different[ly]." (*Id.*)

On November 8, 1999, Stokes filed a third grievance, seeking copies of his performance planning and evaluation paperwork. (Pl.'s Mem. Supp. Attach. 3.) Stokes stated that he had asked Snodgrass for this information but had not received it. (*Id.*) This grievance makes no mention of any alleged discrimination. (*Id.*)

establish a prima facie case of discrimination). Of course, the Court does not make this finding because, although Stokes turned to it frequently, VDOC did not address any prima facie finding directly.

## VI. Conclusion

For the foregoing reasons, it is RECOMMENDED that the Court GRANT VDOC's Motion for Summary Judgment and DENY Stokes's Motion to Continue Complaint.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such order. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to Stokes via first-class mail, to counsel of record, and to the Honorable Robert E. Payne.

/s/
M. Hannah Lauck
United States Magistrate Judge

Date: August 17, 2012
Richmond, Virginia

21